**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 1:CR - 02-83** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **LAMAR BROWN,** | : | |
| | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

Before the Court is Defendant's Motion to Vacate, Set Aside or Correct Sentence

pursuant to 28 U.S.C. § 2255, as subsequently amended on July 15, 2005 ("Motion").  The

Motion has been fully briefed and is ripe for disposition.  For the reasons that follow, the Motion

will be denied.

**I.      Factual Background**

On the afternoon of March 1, 2002, Harrisburg Police Officers, with the assistance of a

confidential informant, arranged a controlled purchase of crack cocaine from within the

residence at 1929 Park Street, Harrisburg, Pennsylvania.  In connection with this controlled buy,

Lieutenant John Goshert, a former Harrisburg Police Officer,[1] met with the confidential

informant, searched her, provided her with $20 in serialized currency, delivered her to the area of

1929 Park Street, watched her knock on the front door of the residence and enter the home, and

waited for her to return. When the confidential informant returned, she no longer had the

serialized currency, but did have two plastic baggies containing what was determined to be crack

cocaine.  (Tr. 67-68.)

---

[1]  Lieutenant Goshert is now employed as a detective with the Dauphin County Criminal
Investigation Division.

Lieutenant Goshert provided information regarding the controlled buy to John Evans, who was at that time an investigator with the Harrisburg Police Department.  On March 4, 2002, Evans prepared an affidavit in support of a search warrant application for authority to search 1929 Park Street.  Among other representations, Evans's affidavit provided as follows:

> within the past 72 hours a controlled buy was made from Lamar Brown inside of 1929 Park St.  This was made by a reliable confidential informant under police supervision.  The informant was searched before and after the purchase.  The purchase was made using serialized currency.  This controlled buy was conducted by Lt Goshert, who did field test this cocaine which did test positive.  This reliable informant also informed Lt Goshert that they have bought both crack and powder cocaine from LA [an alias used by Brown] on numerous past occasions and that the informant has also observed a handgun in the possession of LA.  This informant also stated to Lt. Goshert that the informant has purchased crack cocaine and powder cocaine from LA while he was inside a Plymouth van Pa. Reg. #CHOOPTY.  This informant has provided information to Lt. Goshert and other law enforcement officers in the past which proved to be true and correct and resulted in the arrest and conviction of numerous persons for drug law violations.

(Aff. of Probable Cause, Attached as Exhibit to Doc. No. 66.)  The search warrant application was subsequently granted.

On March 6, 2002, police officers executed the search warrant on 1929 Park Street.  This search yielded a large quantity of crack cocaine along with marijuana and cash located in Petitioner's bedroom.  On April 10, 2002, Petitioner was indicted and charged with possession with intent to distribute in excess of 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1).  Defendant pleaded not guilty to the charges.

Prior to trial, Petitioner, through his counsel, filed a motion to suppress the drug evidence seized during the search, arguing that Investigator Evans's warrant application and affidavit contained false statements without which there would have been no probable cause to issue the

2

search warrant.  In connection therewith, Petitioner moved for a hearing under Franks v.

Delaware, 438 U.S. 154 (1978) ("Franks hearing") to establish whether the warrant was

defective for containing false information.  Also in that motion, Petitioner asked the Court to

direct the Government to disclose the name of the confidential informant whose information was

used to support the warrant application.  Petitioner appended his own affidavit to the motion,

attesting to the truth of the representations contained in the motion that no drug transaction took

place within 1929 Park Street.  By memorandum and order dated October 2, 2002, the Court

denied the motion and Petitioner's request for a Franks hearing, and denied Petitioner's request

for an in camera disclosure of the confidential informant's identity.

Following a jury trial, Petitioner was convicted on October 8, 2002, of possessing with

intent to distribute in excess of 50 grams of crack cocaine and less than 100 grams of marijuana,

in violation of 21 U.S.C. § 841(a)(1).  Petitioner was subsequently sentenced to life

imprisonment.  He is currently incarcerated at the United States Penitentiary in Lewisburg,

Pennsylvania.

## II.    Procedural History

On June 26, 2003, Petitioner filed a notice of appeal with the United States Court of

Appeals for the Third Circuit.  (Doc. No. 55.)  On December 17, 2003, the Third Circuit

dismissed the appeal upon Petitioner's request.  (Doc. No. 60.)  According to Petitioner's

counsel, he and Petitioner determined strategically that Petitioner's challenges to the Court's

denial of the motion to suppress and his conviction and sentence had a greater chance of success

if brought through a habeas proceeding pursuant to 28 U.S.C. § 2255.

On July 9, 2004, Petitioner filed a motion to vacate, set aside, or correct sentence

pursuant to 28 U.S.C. § 2255 that is currently pending before the Court, as subsequently amended.  By this motion, Petitioner seeks habeas relief on the grounds that his trial counsel, Assistant Federal Public Defender Lori Ulrich, Esq., provided constitutionally ineffective representation by, inter alia, failing "to adequately support the [previous] request for a Franks hearing." (Doc. No. 66.)  In this regard, Petitioner contends that his trial attorney did not adequately "challenge the quantum of information supplied in the search warrant affidavit." (Id.)  Petitioner maintains that if his trial counsel had "sufficiently challenged the veracity of all pertinent participants in the alleged drug transaction that preceded [Petitioner's] arrest, it is believed that this court would have granted a Franks hearing."  (Id.)  On September 9, 2004, the Government filed a timely brief in opposition to Petitioner's motion, arguing, inter alia, that Petitioner's motion is an improper attempt to re-litigate an issue that the Court previously addressed.  (Doc. No. 67.)  In its initial response, the Government also discounted the motion as yet another improper attempt by Petitioner to learn the identity of the confidential informant whose information led, in part, to the issuance of the warrant authorizing the search of 1929 Park Street.

On February 8, 2005, the Court convened an evidentiary hearing on Petitioner's motion. During this hearing, Petitioner called six witnesses to testify, including: (1) his mother, Carol Totton; (2) his daughter, Latasha Thompson; (3) his former girlfriend, Jacqueline Hernandez; (4) his trial counsel, Lori Ulrich, Esq.; (5) Lieutenant Goshert; and (6) William Jackson, a detective with the Harrisburg Police Department.  In addition to these witnesses, Petitioner testified on his own behalf, steadfastly maintaining that he never sold drugs out of the house.

Carol Totton offered an affidavit in which she attested to who was living in the home in

early March 2002, and further attested that only a limited number of friends and relatives came into the home between March 1, 2002, and March 6, 2002.  Nevertheless, Ms. Totton acknowledged that she worked on March 1, 2002, during the afternoon and evening and was not home during that period of time.  (Tr. 35.)  Petitioner's daughter, Latasha Thompson, testified that she was home all day on March 1, 2002, and "did [not] allow anyone into the house on that particular date to meet with Lamar Brown."  (Tr. 40.)  Jacqueline Hernandez testified that she lived with Petitioner at 1929 Park Street, and was typically home when she was not working or out of the house with Petitioner.  (Tr. 46.)  Ms. Hernandez testified that she did not recall March 1, 2002, and testified further that it would have been a day that she was at work.  (Id.)

Petitioner next called his trial counsel, Lori Ulrich.  Attorney Ulrich testified that throughout her representation of him, Petitioner adamantly denied that a drug transaction took place within 1929 Park Street.  (Tr. 47.)  Although Attorney Ulrich was aware that Petitioner lived in a home together with his mother, daughter, and girlfriend, she acknowledged that she did not approach any of these people to provide affidavits to support Petitioner's contention that no drug transaction took place on March 1, 2002, and did not believe that she had a good reason to do so.  Attorney Ulrich testified that she filed a motion to suppress the evidence seized during the search of Petitioner's home, and that the motion was denied without a hearing shortly before trial commenced.  Attorney Ulrich testified further that prior to trial, she had no additional information that she believed would have bolstered the motion to suppress, and that her client did not express dissatisfaction with the motion and supporting brief that were submitted in support of the motion to suppress, nor did he urge her to interview any other individuals to support his assertion that no drug transaction took place out of 1929 Park Street.  (Tr. 61-62.)

Following Attorney Ulrich's testimony, Petitioner called Lieutenant Goshert to testify. Lieutenant Goshert testified that he was the officer in charge of arranging the controlled purchase from 1929 Park Street on March 1, 2002, and he testified unequivocally that a controlled buy did, in fact, take place on that date.  (Tr. 65-66.)  Lieutenant Goshert testified further that he met with the confidential informant, searched her, provided her with serialized currency, dropped her off in the area of 1929 Park Street, and waited for her to return.  (Tr. 66.) After the confidential informant returned, she advised Lieutenant Goshert that Petitioner had sold her crack cocaine, and she produced two plastic baggies containing what Lieutenant Goshert field-tested as crack cocaine.  (Id.)  Lieutenant Goshert next testified that the confidential informant had died during the summer of 2004, and revealed that her name was Bonnie Wieser and that she also used several aliases.  (Tr. 67.)  Lieutenant Goshert testified that he did not videotape the controlled buy, nor did he make an audiotape of his conversations with Ms. Wieser, and he did not photocopy the serialized currency that Ms. Wieser used to purchase the drugs from within the residence.  (Id. 69-70.)  Upon questioning from the Government, Lieutenant Goshert testified that the controlled buy took place around 2:00 p.m., and that Ms. Wieser was used as a confidential informant because she indicated that she had purchased from Petitioner in the past, and could purchase from him out of his residence.  (Tr. 73.)

At this point of the evidentiary hearing, Petitioner's counsel advised the Court that he had subpoenaed a number of additional law enforcement officers, one of whom was Investigator Evans, the officer who prepared the affidavit in support of the search warrant to search Petitioner's home.  Investigator Evans did not appear for the hearing, and may not have received a subpoena.  Petitioner's counsel then advised the Court that Investigator Evans had recently

been charged with 69 counts of tampering with evidence, possession of cocaine, and theft of

drugs and evidence.  (Tr. 76.)  Petitioner's counsel offered his belief that Evans and his criminal

charges were relevant to the immediate habeas proceedings.  (Id.)

The Government challenged the relevance of Evans and his criminal charges to the

current proceedings, and requested an offer of proof.  (Tr. 77.)  Additionally, the Government

emphasized that Lieutenant Goshert – who actually arranged and managed the controlled buy

from Petitioner's home on March 1, 2002 – testified about the controlled buy and identified the

deceased confidential informant, thereby confirming the truth of the information contained in

Evans's affidavit.  The Government also reminded Petitioner's counsel that the sole basis for the

pending motion under § 2255 was Petitioner's contention that his trial counsel had been

ineffective with respect to supporting the motion to dismiss and obtaining a Franks hearing, and

in any event Petitioner had abandoned his direct appeal of the Court's denial of the request for a

Franks hearing.

Following this exchange, the Court addressed Petitioner's counsel as follows:

> I'm not sure where you're going, either.  I mean, I think when we get
> as we are now postured, we're really talking about ineffective
> assistance.  That's what you've alleged here.  And the evidence I
> heard today doesn't suggest to me that Ms. Ulrich did anything other
> than what she should have done under the circumstances.  The other
> angle that you have, I don't know.  It certainly doesn't go to
> ineffective assistance. . . . I'll tell you what we're going to do.  I'm
> not going to close the record.  I'm going to give you an opportunity
> to request that the officer in question [Evans] be subpoenaed, but I
> want you to support that.  I want you to make a written offer of proof
> to me, tell me how it fits into your theory of habeas and where
> exactly it is we're going.

(Tr. 79-80.)  Thereafter, Petitioner called Detective William Jackson to the stand.  Jackson

testified that he was involved in the investigation into Lamar Brown's narcotics trafficking, that

he may have been present outside of Brown's home on March 4, 2002, that he did not observe an

unusual amount of traffic in and out of Brown's home on March 6, 2002, and further confirmed

that he was not present at the time Lieutenant Goshert and the confidential informant effected the

controlled buy on March 1, 2002.  At this point, the hearing was suspended.

On February 8, 2005, following the evidentiary hearing, the Court entered an order that

provided as follows:

> After taking testimony from several witnesses and following
> discussion with counsel for Petitioner and the Government, the Court
> agreed to continue the hearing in order to allow Petitioner to submit
> offers of proof regarding the proposed testimony of additional
> witnesses and to supplement or amend the habeas petition.
> Accordingly, IT IS HEREBY ORDERED THAT Petitioner shall
> submit offers of proof and supplement the Petition not later than
> Tuesday, March 1, 2005.  IT IS FURTHER ORDERED THAT the
> Government shall respond to Petitioner's offer of proof and
> supplement to the Petition within ten days from the date on which
> such pleadings are filed.  Pending review of the parties' submissions,
> the Court will determine whether further hearing on this matter is
> necessary.

(Doc. No. 71.)

On March 1, 2005, Petitioner filed a pleading entitled "Brief" in which he argues that the

Court should convene a further hearing to allow Petitioner to call John Evans, Lieutenant

Goshert, and a William Cook to question these individuals further regarding the controlled drug

transaction at 1929 Park Street that Lieutenant Goshert conducted and which formed, at least in

part, the predicate for the search warrant that led to the discovery of narcotics and cash in

Petitioner's bedroom during the search of the residence on March 6, 2002.  (Doc. No. 73.)

Although he offers various arguments, Petitioner essentially argues that the death of the

confidential informant, together with revelations of John Evans's criminal charges, raise

8

questions or concerns about Lieutenant Goshert's testimony about the controlled purchase, and

he offers his assertion that basic questions of fairness "require that the defendant be allowed to

collect as much information as possible, from all government witnesses, about the legitimacy of

the alleged controlled buy within 72 hours of March 4, 2002."  (Id.)

The Government responded on March 4, 2005.  (Doc. No. 74.)  As an initial matter, the

Government questioned the timing of Petitioner's request to call John Evans as a witness, given

that Petitioner knew – or should have known – about Evans's criminal charges in advance of the

February 8, 2005 hearing before this Court, and yet Petitioner failed to secure Evans's

attendance at the hearing.  Beyond this point, the Government maintains that Evans's testimony

is irrelevant to Petitioner's claim that his counsel was ineffective in supporting his motion to

suppress or for a Franks hearing.  The Government argues that Lieutenant Goshert's testimony

confirms – to the extent it is found to be credible – the information contained in Evans's

affidavit.  The Government argues further that even if the confidential informant had deceived

Lieutenant Goshert about the drug transaction from within Petitioner's home, Lieutenant Goshert

was still entitled to rely on the information regarding a sale within Brown's home, and Evans

could permissibly rely on this information as well.  With respect to Petitioner's request that he be

permitted to recall Lieutenant Goshert, the Government objects on the grounds that Petitioner

has already exercised an opportunity to question Lieutenant Goshert extensively about the

controlled buy that formed the basis for the search warrant application, and Petitioner has not

presented new evidence or information that would justify recalling Lieutenant Goshert for yet

another round of questioning.

Noting that the original Petition asserted only ineffectiveness of trial counsel as its basis

for relief, and that Petitioner had been instructed to submit an offer of proof together with an amended petition, the Court entered an order on June 10, 2005, directing that Petitioner submit either a brief explaining how the requested testimony of John Evans, John Goshert, and William Cook was relevant to his claim that his trial counsel was ineffective or, alternatively, amend the Petition to provide an alternative theory of habeas relief and explain clearly how the proposed testimony would support such new theory.  (Doc. No. 75.)

On July 15, 2005, Petitioner submitted an amended motion to vacate, set aside, or correct sentence.  (Doc. No. 78.)  In this amended motion, Petitioner recounts new information that was elicited during the February 8, 2005, hearing, including the fact that the confidential informant who purchased crack cocaine from within 1929 Park Street on March 1, 2002, was dead; that Lieutenant Goshert could not produce copies of serialized currency; that law enforcement officers recovered no buy money when they searched Petitioner's home five days after the controlled buy took place; and that since the February 8, 2005, evidentiary hearing, John Evans had pled guilty and been sentenced for stealing drug evidence in a number of criminal cases over a three-year period.  In addition to reciting the foregoing information, Petitioner repeated his claim that no confidential informant ever entered his home and purchased drugs.  Although the amended motion does not clearly set forth new bases for habeas relief, Petitioner asserts his belief that his Fourth Amendment rights were "seriously violated" in connection with the search of his home, as well as his belief that "he was illegally prosecuted by the United States Government, in violation of his due process rights, after state government officials illegally entered his home, arrested him and filed charges against him."  (Id. at 6-7.)  Petitioner contends that his belief that his constitutional rights were violated requires "a full and extensive

investigation and examination of all facts surrounding the alleged confidential informant's

activities and movements before and during the day of the alleged controlled buy at 1929 Park

Street, Harrisburg, Pennsylvania.  (Id. at 7.)  Finally, Petitioner moves for additional discovery

and to convene a second evidentiary hearing, for the reasons referenced above, and because he

"is unabashedly accusing Lieutenant Goshert, John Evans, and any other law enforcement

officers who are aware of the true facts of fabricating evidence – namely, a controlled buy – to

justify their entry into his home to search for drugs and arrest him for drug dealing."  (Id.)

On November 8, 2005, after being granted an enlargement of time to respond, the

Government filed a brief in opposition to Petitioner's amended motion.  (Doc. No. 85.)  In its

brief, the Government argues that Petitioner has not offered any basis for reopening the

evidentiary hearing – on Petitioner's claim that his trial attorney was ineffective in moving to

suppress evidence or obtain a Franks hearing – because Lieutenant Goshert has already testified

and been cross-examined regarding the circumstances surrounding the controlled buy and

disclosed the identity of the now-deceased confidential informant, thereby substantiating Evans's

attestations in his affidavit in support of the search warrant application.  The Government also

opposes Petitioner's request to call John Evans after already having had an opportunity to do so

because Evans's testimony and the fact of his criminal conviction are not relevant to Petitioner's

claim that his trial lawyer was ineffective.  The Government further reminded Petitioner and

emphasized that the sole basis for Petitioner's claims remains ineffectiveness of counsel:

> Somewhere within the morass of allegations and conspiracy theories
> being tossed about by the petitioner, it must be remembered that this
> § 2255 motion is based upon an allegation that prior counsel was
> ineffective.  Prior counsel in fact filed a motion to suppress on
> essentially the same allegations raised by the petitioner currently, that
> is, that there never was a controlled purchase made from his

> residence and that the affidavit was false.  The district court saw fit to deny that motion to suppress without even convening an evidentiary hearing.  The court declined also to require the United States to divulge the name of the confidential informant.  Current counsel's position seems to essentially be that he really has nothing in addition to offer the court to warrant an evidentiary hearing or the reconvening of an evidentiary hearing beyond what former counsel had except that circumstances make his argument appear to have substance.  The suspicion of wrongdoing, however, is woefully inadequate to justify the reconvening of this hearing.

(Id. at 4.)  The Government further points out that Petitioner did, in fact, seek to appeal this Court's denial of his original motion to suppress, but subsequently abandoned that appeals process, choosing instead to challenge the adequacy of his trial counsel's representation by way of a petition for habeas corpus.  Accordingly, the Government contends that Petitioner failed to exhaust all available avenues of relief, and his current petition for habeas relief should be rejected without further hearing.  (Id. at 5.)

The briefing on this matter is now closed and Petitioner's motion to vacate, set aside, or correct his sentence, as amended, is ripe for disposition.  For the reasons that follow, Petitioner's motion for additional discovery and to re-convene an evidentiary hearing will be denied, as will his petition for habeas relief.  A careful review of Petitioner's several motions reveals only one clearly articulated claim: that his trial counsel was constitutionally inadequate in seeking to suppress evidence or to obtain the identity of the confidential informant who participated in the controlled purchase of crack cocaine from his house on March 1, 2002.  Petitioner has simply failed to support this claim with credible evidence, and his allegations that the law enforcement officers involved in his arrest and prosecution were lying or otherwise engaged in an unlawful conspiracy lack any factual support and appear to be nothing more than an effort to re-litigate a matter that this Court previously considered and rejected prior to trial.

12

### III.    Discussion

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct the prisoner's sentence.  28 U.S.C. § 2255.  However, § 2255 does not afford a remedy for all errors that may have been made at trial or sentencing.  United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993).  "The alleged error must raise 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  Id. (quoting United States v. Hill, 368 U.S. 424, 428 (1962)).  Furthermore, § 2255 generally limits federal prisoners' ability to attack the validity of their sentences to four grounds.  Hill v. United States, 368 U.S. 424, 428 (1962). A prisoner may claim relief by alleging that:  (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the sentencing court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is "otherwise subject to collateral attack."  Id.

A collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in order to survive.  Specifically, to prevail on a claim of ineffective assistance of counsel, a petitioner must establish that:  (1) the performance of counsel fell below an objective standard of reasonableness; and (2) that, but for counsel's errors, the result of the sentencing hearing would have been different.  Strickland v. Washington, 466 U.S. 668, 687-88, 691-92 (1984).  A petitioner must satisfy both of the Strickland prongs in order to maintain a claim of ineffective counsel.  George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).

The first Strickland prong requires a petitioner to "establish first that counsel's performance was deficient."  Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001).  This prong

requires a petitioner to show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. <u>Id.</u>  Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. <u>Id.</u>  However, "[t]here is a 'strong presumption' that counsel's performance was reasonable." <u>Id.</u> (quoting <u>Berryman v. Morton</u>, 100 F.3d 1089, 1094 (3d Cir. 1996)).

Under the second <u>Strickland</u> prong, a petitioner "must demonstrate that he was prejudiced by counsel's errors." <u>Id.</u>  This prong requires the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u>  "Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

Moreover, the decision whether to hold a hearing when a prisoner moves to vacate a judgment under § 2255 is left to the sound discretion of the district court. <u>Virgin Islands v. Forte</u>, 865 F.2d 59, 62 (3d Cir. 1989).  In general, if a petitioner raises an issue of material fact, a district court must afford a hearing in order to determine the truth of the prisoner's allegations. <u>Essig</u>, 10 F.3d at 976.  However, a prisoner is not entitled to a hearing if the allegations set forth are contradicted conclusively by the record or if the allegations are patently frivolous. <u>Solis v. United States</u>, 252 F.3d 289, 295 (3d Cir. 2001).

Petitioner argues that his trial attorney was ineffective because she allegedly did not offer evidence, supported by affidavit or sufficient evidence, that the affiant, "and/or other law enforcement officers, contributed untruthful statements to the original probable cause affidavit

and to the original search warrant affidavit.[2]  (Doc. No. 61, ¶ 21.)  Petitioner framed his

argument as follows in his original motion, which he has incorporated into his amended petition:

> The argument of movant is simple.  The information supplied in the
> affidavit of probable cause supporting the search warrant is
> inadequate and, therefore, could not form the basis for a legal search
> of the movant's residence.  Nonetheless, even if the information
> contained in the search warrant affidavit were sufficient to support a
> legal search, the removal of the false information about an alleged
> controlled buy within 72 hours at the movant's residence, would
> certainly render the search warrant affidavit inadequate to support a
> legal search of the movant's residence.  Previous counsel for the
> movant failed to effectively challenge the adequacy of the search
> warrant affidavit and, furthermore, the credibility of the affiant, the
> confidential informant, and any witnesses, including law enforcement
> officers, who would swear or affirm that a controlled buy took place
> at the movant's residence.

(Doc. No. 66, at 7.)

Petitioner has attempted to support his claim by presenting affidavits from his mother,

Carol Totton, and his former girlfriend, Jacqueline Hernandez, both of whom attested that no

person entered the home at 1929 Park Street between March 1, 2002, and March 6, 2002, to

purchase drugs.  It appears that Petitioner is suggesting that his trial counsel should have

inquired of these two women, as well as his daughter who also resided with him at 1929 Park

Street, in an attempt to obtain evidentiary support for Petitioner's original motion to suppress.

The Court finds Petitioner's claims that his trial counsel was ineffective under the

Strickland test to be without merit.  The record is clear that Petitioner's trial counsel filed a

motion for a Franks hearing and to suppress the evidence seized during the search warrant by

---

[2]  Plaintiff advances this argument, despite the incontrovertible fact that Petitioner's trial
counsel did, in fact, move to suppress the search and for a Franks hearing, and supported this
motion through Petitioner's own sworn affidavit in which he attested to the truth of the
representations contained in his motion to suppress that no controlled buy had taken place.

arguing that John Evans lied in his affidavit offered in support of the warrant application, and she supported this motion with Petitioner's own sworn affidavit attesting to the truth of the representations contained in the motion.  This Court found that Petitioner had failed to make a substantial showing that Evans intentionally or recklessly including false statements in the affidavit, and denied Petitioner's request for a <u>Franks</u> hearing and denied the motion to suppress.

In filing the motion and supporting it with Petitioner's own affidavit, Petitioner's trial counsel did not commit any error, much less an error so serious that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  Petitioner's claim that his counsel was ineffective within the meaning of <u>Strickland</u> therefore fails as a matter of law, and the Court need not consider <u>Strickland's</u> second prong – namely, to examine whether counsel's errors were so serious as to have prejudiced Petitioner and that but for such error Petitioner would have succeeded in obtaining a Franks hearing and prevailing on his motion to suppress.

Even were the Court required to consider this prong, the evidence developed by Petitioner entirely fails to support his claim that John Evans lied in his affidavit.  Petitioner's central argument remains that Attorney Ulrich should have done more to attack the truthfulness of the representations contained in John Evans's affidavit, apparently by submitting additional affidavits from other residents of 1929 Park Street to echo Petitioner's claim that no confidential informant purchased drugs from within the residence.  Petitioner appended two such affidavits to his original motion, one from his mother, Carol Totton, and the other from his former girlfriend, Jacqueline Hernandez.  The limited affidavits alone would have been insufficient to support Petitioner's habeas petition; their value was further reduced through the testimony that the

16

witnesses actually provided to the Court on February 8, 2005. Ms. Totton testified that on the day of the controlled purchase, she was at work all afternoon and evening. It is thus clear that she could not testify competently that no drug transaction took place at her home during the afternoon of March 1, 2002. Similarly, Jacqueline Hernandez testified that she worked outside the home on March 1, 2002. Accordingly, Ms. Hernandez's representation that no drug transaction took place on that date is similarly of little evidentiary value. The testimony offered by Petitioner's daughter, Latasha Thompson, was similarly limited, and she was able to state only that she personally did not let anyone into the residence on March 1, 2002.

In finding that the evidence adduced by Petitioner is inadequate to support his habeas petition and the claims presented therein, the Court emphasizes that John Evans's truthfulness in his affidavit was the <u>only</u> relevant inquiry for purposes of moving for a <u>Franks</u> hearing. The Third Circuit has explained as follows: "It is well-established that a substantial showing of the informant's untruthfulness is not sufficient to warrant a <u>Franks</u> hearing. The Supreme Court made clear throughout <u>Franks</u> that a substantial preliminary showing of intentional or reckless falsity <u>on the part of the affiant</u> must be made in order for the defendant to have a right to an evidentiary hearing on the affiant's veracity." <u>United States v. Brown</u>, 3 F.3d 673, 677 (3d Cir. 1993) (emphasis added). In <u>Brown</u>, the Third Circuit rejected appellant's contention that the district court should have granted him a <u>Franks</u> hearing where he had submitted his own affidavit, together with an affidavit from a private investigator, to support appellant's claim that the affidavit offered in support of a search warrant application contained several inaccuracies. The Third Circuit found that appellant's showing was insufficient:

> the affidavits of Brown and the private investigator do not support an
> inference that Officer Hildebrand was recklessly or deliberately

> untruthful.  Even if the events in Brown's home never occurred as
> allegedly reported by the informant, that shows little or nothing about
> the affiant's veracity, for it is at least as likely that the officer
> honestly, or perhaps negligently, believed an untruthful informant
> was it is that the affiant himself was untruthful.  In fact, the officer's
> veracity is more probable than the veracity of the informant since the
> officer provided testimony under oath.  At all events, <u>Franks</u> and its
> progeny make clear that the defendant must make a substantial
> showing that the affiant "knew of or recklessly disregarded the
> informant's untruthfulness," and the defendants' affidavits fail to
> constitute such a showing.

<u>Id.</u> at 678 (citation omitted).

In addition to affirming the district court's denial of appellant's request for a <u>Franks</u>

hearing, the Third Circuit found that the district court did not abuse its discretion in denying

appellant's request to order the disclosure of the confidential informant's identity.  In so finding,

the Third Circuit explained as follows:

> In <u>Franks</u>, the Court left open "the difficult question whether a
> reviewing court must ever require the revelation of the identity of an
> informant once a substantial preliminary showing of [the affiant's]
> falsity has been made."  While expressly not reaching the issue, the
> Court's statement suggests that if revelation of the identity of an
> informant is ever required in the context of a motion for a <u>Franks</u>
> hearing, it would only be after the defendant made a substantial
> preliminary showing of the affiant's reckless or intentional disregard
> of the truth. . . . [W] hold that, because the defendants' offer of proof
> failed to show that the affiant was untruthful, the district court did not
> abuse its discretion in refusing to order the disclosure of the
> informant.

<u>Id.</u> at 679 (quoting <u>Franks</u>, 438 U.S. at 170).  As the foregoing demonstrates, the Third Circuit

has instructed that in evaluating a defendant's motion for a <u>Franks</u> hearing and for disclosure of a

confidential informant's identity, the relevant inquiry is the veracity of the affiant, not the

veracity of the confidential informant whose information was included in the application in

support of the search warrant.

18

In his original motion to suppress, and in his request for a <u>Franks</u> hearing and disclosure of the confidential informant's identity, Petitioner failed to make a substantial showing that John Evans was untruthful in his affidavit that supported the search warrant application.  The evidence that Petitioner has submitted in support of his § 2255 motion would have been similarly inadequate to support his motion had it been offered at the time of the original motion.  Indeed, Lieutenant Goshert confirmed the truth of the information that he supplied John Evans with the information obtained from the confidential informant, thereby substantiating the truth of Evans's representations.  Even if the confidential informant lied to Lieutenant Goshert, both Lieutenant Goshert and John Evans were entitled to believe her and to rely upon that information in obtaining the warrant application.  Upon consideration of the evidence submitted, together with Petitioner's various arguments advanced in his now-amended petition for habeas relief, it is clear that Petitioner's trial counsel did not err in prosecuting and supporting the original motion, and nothing that Petitioner has presented demonstrates that his trial counsel was ineffective in advancing the motion.

Finally, although Petitioner has been liberally granted an opportunity to amend his original petition to include alternate theories of habeas relief, Petitioner has failed to offer any substantive amendment.  Petitioner has loosely alleged that his Fourth Amendment rights were violated, but this claim is merely a restatement of his claim that his counsel was ineffective in establishing that John Evans lied in his affidavit supporting the warrant application.  Notwithstanding Petitioner's claim that he "believes that his Fourth Amendment rights have been seriously violated," Petitioner has failed to provide the Court with a basis for habeas relief other than what he has already presented.  Petitioner's claim that his Fifth Amendment rights

were violated through what he claims was an illegal prosecution is similarly vague, and appears to be little more than another statement that Petitioner believes law enforcement officers lied in obtaining a warrant to search his home, and that the law enforcement officers violated his due process rights in "illegally enter[ing] his home, arrest[ing] him and fil[ing] charges against him." Petitioner does not support this claim with evidence, but instead requests "a full and extensive examination of all facts surrounding the alleged confidential informant's activities and movements before and during the day of the alleged controlled buy at 1929 Park Street, Harrisburg, Pennsylvania." (Doc. No. 78, at 7.)  The Court does not find that this general claim adequately sets forth a basis for habeas relief, and Petitioner fails to support this claim in any meaningful way other than to repeat his claim that law enforcement officers lied in an effort to obtain a warrant to search his home.

Finally, Petitioner has moved the Court to require the Government to provide him with "any and all reports prepared by any and all officers who have knowledge about the alleged confidential informant, the informant's veracity, the informant's dealings with the police, and the specific activities of the confidential informant that purportedly led to the search warrant to provide authority to enter the petitioner's home." (Id. at 8.)  Despite already having had an evidentiary hearing at which he had the opportunity to question officers involved in the investigation into Petitioner's drug trafficking activities, and his subsequent prosecution, Petitioner seeks another evidentiary hearing during which he would call John Evans and William Cook, and during which he would recall Lieutenant Goshert, ostensibly to question these officers regarding the circumstances surrounding the confidential informant's purchase of crack cocaine from within Petitioner's home that led to the warrant authorizing the search of Petitioner's home.

Although the Court is sensitive to the fact that Petitioner is now serving a life sentence, the Court finds that Petitioner has already submitted affidavits in support of his motion that have failed to substantiate his claim that his trial counsel was ineffective, and he has had ample opportunity to subpoena and question witnesses in connection with this habeas petition.  As noted, the evidence adduced thus far has failed to support Petitioner's claims and has, in fact, undermined them.  Lieutenant Goshert, who testified at length and was examined by Petitioner's counsel regarding the circumstances surrounding the controlled buy, and the information supplied to John Evans, has confirmed the truthfulness of the information that John Evans included in his affidavit supporting the warrant application.  The only apparent purpose to re-convening the evidentiary hearing to allow Petitioner to call John Evans to testify is to allow Petitioner to see whether John Evans will contradict Lieutenant Goshert's testimony, or that he and Lieutenant Goshert conspired to fabricate information that was contained in the affidavit of probable cause.  Petitioner has not made any such allegation, nor has made an offer of proof as to what John Evans would testify to if called.

The Court has given Petitioner a liberal opportunity to amend his petition to provide additional bases for his claims to habeas relief, and he has failed to do so.  Instead, Petitioner has assembled a variety of facts and allegations in an effort to make it appear as though law enforcement officers lied, or may have lied, in connection with obtaining a search warrant to search his home for narcotics, which were, in fact, discovered during the search conducted pursuant to a warrant on March 6, 2002.  The Court does not find that Petitioner has succeeded in advancing additional bases for habeas relief, and the Court finds it unnecessary to order further discovery on a matter that has already been litigated, and finds that holding further

21

evidentiary hearings to allow Petitioner an opportunity to question or re-question certain law enforcement personnel involved in the investigation and prosecution would be unwarranted and will be denied.

**IV.      Conclusion**

Notwithstanding the various allegations that have been presented in connection with his amended habeas petition, the fact remains that Petitioner's single clearly articulated claim throughout this post-trial proceeding has been a challenge to the adequacy of his trial representation, specifically in the efforts his counsel took to obtain a <u>Franks</u> hearing and learn the identity of the confidential informant, in an attempt to suppress evidence seized from Petitioner's home pursuant to a warrant on March 6, 2002.  Although Petitioner has suggested that various constitutional rights were violated in connection with this search, Petitioner has failed to articulate any other cognizable right to habeas relief, and he has been unable to produce credible evidence to support his claims.  For all of the reasons set forth above, the Court will deny Petitioner's request to take further discovery and to re-convene the evidentiary hearing on this matter, and will deny Petitioner's amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  An appropriate order follows this memorandum.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 1:CR - 02-0083** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **LAMAR BROWN,** | : | |
| | : | |
| **Defendant** | : | |

## <u>ORDER</u>

**AND NOW**, this 26th day of October 2006, upon consideration of Petitioner's amended motion to vacate, set aside, or correct sentence (Doc. No. 78), and for the reasons more fully set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** the motion is **DENIED**.

**IT IS FURTHER ORDERED THAT** Petitioner's request to take further discovery and to re-convene the evidentiary hearing in this matter is **DENIED**.  The Clerk of Court is directed to close the file.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania